### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**MONIQUA JEFFERSON,**<br>**VALENTINO HALL, and**<br>**DERRICK BOYD, JR.**<br><br>**Defendants.** | **Case No. 25-CR-195 (ACR)** |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. § 3142(f)(1)(E) (Felony Involving Possession or Use of a Firearm), as the Defendants, Moniqua Jefferson, Valentino Hall, and Derrick Boyd, Jr. are charged with violating 18 U.S.C. § 933(a)(3) (Conspiracy to Traffic Firearms). The Defendants stand before this Court charged with conspiring to illegally traffic firearms in a scheme in which Defendants Jefferson and Hall would solicit whether individuals, including Defendant Boyd, who had a prior disqualifying conviction, were interested in acquiring firearms, and then Hall and Jefferson would legally purchase the firearms in Virginia for the purpose of reselling or transferring the firearms. Since 2022, Jefferson and Hall personally purchased 22 firearms. Two of these firearms were transferred to Boyd while another six of these firearms ultimately ended up in the hands of convicted felons who carried these firearms while in the community in the District of Columbia and Maryland. As a result, pursuant to 18 U.S.C. § 3142(g), the relevant factors support pretrial detention.

1

## I.    **BACKGROUND**

On July 11, 2025, the Grand Jury returned an indictment charging Defendants Moniqua Jefferson, Valentino Hall, and Derrick Boyd, Jr. with one count of Conspiracy to Traffic Firearms, in violation of 18 U.S.C. § 933(a)(3). On July 16, 2025, an initial appearance was held before the Honorable Magistrate Judge Matthew Sharbaugh. After the United States made a motion for pretrial detention, the Court set the detention hearing for July 17, 2025.

### A)  **Jefferson's and Hall's Firearm Purchases**

Between August 12, 2022, and September 11, 2024, a period of a little more than two years, Defendant Jefferson purchased fourteen firearms from three Federal Firearms Licensed (FFL) retailers in Virginia: Green Top Sporting Goods Corp (hereafter "Green Top"),[1] Smart Pawn North Carolina LLC (hereafter "Jefferson Loan"),[2] and New America Arms LLC (hereafter "New American Arms").[3]   Meanwhile, Hall purchased a total of ten firearms, with eight of those purchases occurring since 2022.

---

[1]        Green Top is located at 10150 Lakeridge Parkway, Ashland, Virginia

[2]        Jefferson Loan is located at 123 E. Broad Street, Richmond, Virginia

[3]        New American Arms is located at 6017 W. Broad Street, Richmond, Virginia.

| # | Certification Date[4] | Transfer Date[5] | Make & Model | Serial # | FFL[6] | Recovered |
|---|---|---|---|---|---|---|
| | | | **JEFFERSON'S FIREARMS PURCHASES** | | | |
| 1 | 08/12/2022 | 08/12/2022 | Aero-Precision APF-15 | AM003848 | Green Top | No |
| 2 | 09/25/2022 | 09/25/2022 | S&W M&P 40 Shield | HLP4171 | Green Top | No |
| 3 | 01/24/2023 | 01/24/2023 | Glock 23 Gen 4 | BCSR351 | Green Top | No |
| 4 | 12/15/2023 | 12/15/2023 | Palmetto State Armory PA 15 | NOTAMEAL000350 | New American Arms | Yes – from Boyd on July 16, 2025 |
| 5 | 02/07/2024 | 02/07/2024 | Spikes Tactical ST15 | SRM007466 | Green Top | No |
| 6 | 02/17/2024 | 02/17/2024 | Glock 29 | BNTD074 | Jefferson Loan | Yes – 3/20/2025 |
| 7 | 02/26/2024 | 02/26/2024 | Taurus PTIII G2-A | 1C060401 | Jefferson Loan | No |
| 8 | 05/22/2024 | 05/22/2024 | Glock 30 | MTG326 | Jefferson Loan | No |
| 9 | 06/02/2024 | 06/02/2024 | Beretta APX | AXC105535 | Green Top | Yes – 7/2/2024 |
| 10 | 06/02/2024 | 06/02/2024 | Glock 26 | RYX115 | Green Top | No |
| 11 | 06/06/2024 | 06/06/2024 | Girsan MC9S | T6368-21CJ01502 | Jefferson Loan | Yes – 6/23/2024 |
| 12 | 08/16/2024 | 08/16/2024 | Ruger LC9s | 459-51408 | Green Top | No |
| 13 | 09/11/2024 | 09/12/2024 | S&W SD9 | FDV3402 | Jefferson Loan | Yes – from Jefferson |
| 14 | 09/11/2024 | 09/12/2024 | S&W SD9 | FDW5759 | Jefferson Loan | Yes – from Jefferson |

---

[4]    The certification date is when a purchaser initially attempts to acquire the firearm. This includes filling out the ATF Form 4473 and certifying all answers are true and accurate.

[5]    The transfer date is when a purchaser is able to obtain the firearm from the store. Due to a NICS background delay, this date can be a few days later than the certification date.

[6]    Each of the listed transactions required the completion of ATF Form 4473, which is completed at the FFL premises when a firearm is transferred over the counter. The form requires that the purchaser accurately provide their name, current state of residence and address, place of birth, height, weight, sex, and birthdate. Additionally, the purchaser must provide answer "yes/no" questions that are related to the lawfulness of the transaction and provide a valid government-issued photo identification document to the FFL that contains the transferee's/buyer's name, residence address, and date of birth. The Government's investigation revealed that Defendant Jefferson completed ATF Form 4473 for the purchase of each of the above-listed firearms.

| | | | HALL'S FIREARMS PURCHASES | | | |
|---|---|---|---|---|---|---|
| # | Certification Date[7] | Transfer Date[8] | Make & Model | Serial # | FFL | Recovered |
| 1 | 2/27/2019 | 2/27/2019 | Ruger P95 | 317-08566 | Ole Town Silver Exchange | Yes – 5/16/2023 |
| 2 | 8/22/2021 | 8/22/2021 | Taurus G2C | ACG000509 | Green Top | Yes – from Valentino Hall |
| 3 | 5/22/2023 | 5/22/2023 | Girsan MC9S | T6368-21CJ01502 | Green Top | No |
| 4 | 9/16/2023 | 9/16/2023 | PSA Virginia 15 | Virtue 10476 | Green Top | No |
| 5 | 11/04/2023 | 11/04/2023 | Palmetto State Armory PA15 | SCD261834 | Showmasters – Gun Show | Yes – 5/28/2025 |
| 6 | 12/15/2023 | 12/15/2023 | ATI Omni Hybrid | NS373852 | Green Top | Yes – 2/8/2025 |
| 7 | 5/11/2024 | 5/11/2024 | Ruger EC9 | 453-92366 | Green Top | Yes – 6/14/2025 |
| 8 | 2/7/2025 | 2/7/2025 | HS Produkt XD9 | BYZ88131 | Green Top | No |
| 9 | 3/9/2025 | 3/9/2025 | PSA Dagger Mirco | SC901668 | Green Top | Yes – from Hall's residence on 7/16/25 |
| 10 | 5/1/2025 | 5/1/2025 | ATI MilSport AR-15 Carbine | MSA156562 | Green Top | Yes – from Hall's residence on 7/16/25 |

**B)  Evidence of the Conspiracy**

Communications found on the devices for Defendants Jefferson and Hall revealed coordination among the three defendants to make firearms purchases on December 15, 2023, August 16, 2024, and September 12, 2024.

---

[7]    The certification date is when a purchaser initially attempts to acquire the firearm. This includes filling out the ATF Form 4473 and certifying all answers are true and accurate.

[8]    The transfer date is when a purchaser is able to obtain the firearm from the store. Due to a NICS background delay, this date can be a few days later than the certification date.

1. ***December 15, 2023, Firearm Purchase***

On December 15, 2023, Defendants Hall and Boyd communicated via text message to coordinate the purchase of a firearm for Defendant Boyd by Defendants Hall and Jefferson. Communications show that Defendant Boyd was seeking to acquire the lower receiver, parts, and a firearm. Defendant Hall responded by discussing which federally licensed firearm retailer in Virginia sold what Defendant Boyd was looking for – noting that New American Arms had what Defendant Boyd was looking for.

A review of ATF Form 4473 show that both Defendants Jefferson and Hall each made firearms purchases on December 15, 2023. Defendant Jefferson purchased a Palmetto State Armory, PA-15, lower receiver, serial number "NOTAMEAL000350" from New America Arms and Defendant Hall purchased an ATI, Omni Hybrid, 5.56 caliber pistol, S/N "NS373852" from Green Top Sporting Goods.

On July 16, 2025, agents with the ATF executed a search warrant at Defendant Boyd's home in Capitol Heights, Maryland. Inside of the home, agents found the firearm, identified by the serial number and manufacturer labeling, purchased by Jefferson back on December 15, 2023.





*Figure 1 - Photographs of the firearm found in Boyd's home on July 16, 2025. Defendant Jefferson purchased the firearm on December 15, 2023. The serial number is circled in red*

### 2.   <u>August 16, 2024, Firearm Purchase</u>

On August 16, 2024, Jefferson purchased a Ruger LC9s from Green Top on Defendant Boyd's behalf. Two days earlier, on August 14, 2024, Defendant Boyd sent Defendant Hall a screenshot of a Ruger firearm, saying "this going to be the one [sic]," identifying the firearm he wanted Defendants Hall and Jefferson to purchase on his behalf. Metadata from this photo show that Defendant Boyd was in the District of Columbia when he sent this photograph. In response, Defendant Hall sent Defendant Boyd the phone number for Defendant Jefferson.



***Figure 2 – Photo sent from Boyd to Hall identifying the gun he wanted purchased on his behalf***

The next day, August 15, 2024, Defendant Boyd[9] sent Defendant Jefferson a message that read in relevant part, "I was going to see if yall [sic] was going to go to greentop [sic]." Defendant Jefferson responded that she could "get it tomorrow morning" and asked, "U have a picture of what u want or know what u want with the price?" Defendant Boyd then sent a screenshot of a Ruger handgun from Green Top's website to Defendant Jefferson.

---

[9] Boyd was saved as a contact in Jefferson's phone under the name "DJ" with a phone number of (301) 653-1429 (hereinafter "Boyd Phone Number").



***Figure 3 - Screenshot of firearm from Green Top's website sent from Body to Jefferson on August 15, 2024 showing a Ruger handgun***

On August 16, 2024, at 10:49 a.m.—approximately 16 minutes before Defendants Boyd and Jefferson arrived at Green Top—Defendant Boyd sent Defendant Jefferson money over iMessage using the "Apple Cash" service and then sent Defendant Jefferson a photograph of a Ruger firearm on Green Top's website.[10]  At 11:54 a.m.—while the transaction was still ongoing—Boyd messaged Jefferson, "You good?"

Separately, on August 16, 2024, Hall texted Jefferson telling her that they were "charging people $100." Jefferson purchased the Ruger firearm described above for $266.99. That same day, Defendant Boyd sent Defendant Jefferson $370.00.

---

[10]     The picture's metadata indicates that BOYD took the photo on August 15, 2016, at 8:12 p.m., in the 3700 block of D Street Southeast, in Washington, D.C.  An MPD police report from August 29, 2023, for a family disturbance, listed an address in this block for BOYD.

Video surveillance footage from Green Top showed Defendants Jefferson and Boyd executing the transaction they discussed via text messages over the preceding two days.



*Figure 4 - Defendant Jefferson (LEFT) wore a black shirt and red and black shorts. Defendant Boyd (RIGHT) wore a white tank top, black shorts, and white shorts.*

At approximately 11:06 a.m., Defendant Jefferson stood at the gun counter and spoke with an employee. Defendant Jefferson showed the employee an image on her phone, and the employee pointed to a different section of firearms. Defendant Jefferson met the employee on the other side of the gun counter and pointed down towards a firearm. The employee retrieved a firearm from the display case before handing it over the counter. Defendant Jefferson looked at the firearm. During this time, Defendant Boyd looked at different items in another section.

Shortly after looking at the firearm, Defendant Jefferson began filling out paperwork to purchase the firearm. At approximately 11:11 a.m., Defendant Boyd walked back towards the entrance/exit while using his cellphone.

At approximately 12:06 p.m., Defendant Jefferson used her phone and talked on the phone while an employee filled out paperwork in front of her.  Shortly thereafter, Defendant Jefferson completed the transaction, and the employee handed her paperwork and the firearm in a black bag.

At approximately 12:16 p.m., Defendant Jefferson left in the same white sedan.

3. ***September 12, 2024 Firearms Purchases***

On September 11, 2024, Defendants Jefferson, Hall, and a co-conspirator went to Jefferson Loan to purchase two identical Smith and Wesson (S&W) SD9 9-millimeter firearms for a total of $477. Jefferson Loan staff informed the Defendants that they were unable to complete the transfer until the next day.

On September 12, 2024, agents with the Bureau of Alcohol, Tobacco, and Firearms (ATF) conducted surveillance at Defendant Jefferson's residence and at Jefferson Loan.  At the residence, law enforcement observed two males enter a green Ford van and leave the residence. The same green Ford was then observed parking near Jefferson Loan.  The two occupants in the vehicle were later interviewed and identified as Defendant Hall and a co-conspirator.

At approximately 5:00 PM, Defendant Jefferson exited Jefferson Loan with a white grocery-style bag containing the two firearms. Agents with the ATF approached Jefferson, explained who they were, and asked if she would assist them by answering some questions. Defendant Jefferson agreed.

At first, Defendant Jefferson stated that she only purchased firearms for herself.  Defendant Jefferson stated that she had pawned her firearms and that firearms had also been stolen from her. As the interview continued, Defendant Jefferson then admitted that she had sold multiple firearms to different people.  Defendant Jefferson stated that to sell firearms, she would purchase the

firearms and post videos on Instagram at the gun range.  Defendant Jefferson stated that people she knows would then contact her about purchasing the firearms.

Regarding the purchase on September 11, 2025, Defendant Jefferson stated that she entered Jefferson Loan with Defendant Hall and the co-conspirator and attempted to purchase two S&W SD9 pistols.  Jefferson stated that she knew the co-conspirator was a felon and could not own a firearm, but that the co-conspirator still went into the store with her and Defendant Hall and looked at guns.  Defendant Jefferson claimed that she had purchased both firearms for herself and intended to carry both.

At the same time as the Jefferson interview, other Special Agents interviewed Defendant Hall, who stated that one of the two S&W SD9 firearms was intended to be a gift for him.

Text messages from September 11th and 12th show that Jefferson and Hall were purchasing the firearms together. On September 11th, Hall texted Jefferson, saying, "I want my shit." Then, on September 12th, Hall expressed frustration at how long it was taking to purchase the firearms.


### C) Recovery of the Firearms Purchased by Jefferson

Three of the firearms purchased by Jefferson ended up being recovered by the Metropolitan Police Department from individuals who were not licensed to possess or carry firearms in the District of Columbia. Two of those individuals were prohibited for possessing any firearms due to prior felony convictions.

| # | Certification Date | Transfer Date | Make & Model | Serial # | FFL | Recovered |
|---|---|---|---|---|---|---|
| 1 | 02/17/2024 | 02/17/2024 | Glock 29 | BNTD074 | Jefferson Loan | 3/20/2025 |
| 2 | 06/02/2024 | 06/02/2024 | Beretta APX | AXC105535 | Green Top | 7/2/2024 |
| 3 | 06/06/2024 | 06/06/2024 | Girsan MC9S | T6368-21CJ01502 | Jefferson Loan | 6/23/2024 |

**RECOVERIES OF FIREARMS PURCHASED BY JEFFERSON**

1. *__Firearm Purchased on February 17, 2024__*

On February 17, 2024, Defendant Jefferson purchased a Glock 29 with Serial Number BNTD074 from Jefferson Loan in Richmond, Virginia. A little over a year later, on March 20, 2025, this firearm was recovered in the vicinity of 4234 South Avenue SE, in the District of Columbia (CCN 25040272).

According to the Gerstein filed in this case, officers observed Thomas Anthony Good (aka Dion Zellars) on the 4200 block of Southern Avenue SE separate himself from a group when he became aware of the presence of an MPD marked patrol vehicle. Officers observed Good clutching the center of his waistband, make a jittery movement, and then run from the police while clutching his waistband. Officers then saw the defendant take out a gun in his left hand. Officers ordered the defendant to drop the gun, and while running through the backyard of 4234 Southern Avenue SE, the defendant tossed the gun, which was soon recovered. Officers found that the firearm had one round in the chamber and fourteen rounds in the magazine that had a capacity of fifteen rounds.

Good is currently charged in the United States District Court for the District of Columbia with one count of 18 U.S.C. § 922(g) (Docket No. 25-CR-122 (RBW)). The case is pending. At the time Good was arrested, he had multiple prior felony convictions and was on supervised release for his most recent conviction in 2015 CF1 3336, where he was found guilty after a jury trial of Assault with a Dangerous Weapon, Possession of a Firearm During a Crime of Violence, Unlawful Possession of a Firearm, multiple counts of Felony Contempt, and Obstruction of Justice.

According to the arrest warrant filed in 2015 CF1 3336, Good got into an argument with his ex-girlfriend and escorted him out of her home. As she was looking through the peep hole of her front door, the defendant fired several gunshots into the front door but was not struck by any of the shots.

Good has three additional prior convictions for illegal gun possession. First, Good was previously convicted in Prince George's County in 2011 for Possession of a Firearm by a Prohibited Person (Case No. CT1110093X). Second, Good was previously convicted of Carrying a Pistol Without a License in the District of Columbia in 2010 CF2 5414. And finally, Good was previously convicted in Prince George's County in 2006 of Carrying a Handgun (Case No. CT061877X).

2. ***Firearms Purchased on June 2, 2024***

On June 2, 2024, Defendant Jefferson purchased two guns from Green Top, one of which was a Glock 26 with Serial Number RYX115. Just 30 days later, the firearm was recovered from a co-conspirator in the District of Columbia.

Video surveillance from Green Top captured the multiple firearm purchase. It showed that Jefferson arrived at Green Top at approximately 9:42 A.M. with Defendant Hall and two minor children. She purchased the firearm and left the location approximately forty-five minutes later.



*Figure 5 Jefferson (gray shirt, black pants, and a hat) and Hall (red shirt, black pants, and black shoes) entering Green Top together with two minors.*

Just thirty days later, on July 2, 2024, officers with the Metropolitan Police Department conducted a traffic stop for a gray Acura SUV, which was a vehicle of interest related to a shooting. Officers stopped the vehicle and found a co-conspirator in the driver's seat. After he was stepped out of the vehicle, he admitted there was a gun in the vehicle. Officers looked inside of the vehicle and found the firearm tucked in between the driver's seat and center console of the vehicle. The firearm was found with one round in the chamber and two rounds in the magazine. An additional round of ammunition was found in the co-conspirators sock.[11] The co-conspirator had a prior

---

11    The co-conspirator was charged with Unlawful Possession of a Firearm and related offenses in Superior Court. The matter was ultimately dismissed without prejudice due to the Court's finding that the defendant was prejudiced by the untimely disclosure of materials relating to the shooting investigation.

felony conviction for Aggravated Assault, Robbery, Aggravated Battery, and Felony Theft by Taking.

### 3. *Firearm Purchased on June 6, 2024*

According to ATF Form 4473, on June 6, 2024, Defendant Jefferson purchased a Girsan MC9S firearm with Serial Number T6368-21CJ01502 from Jefferson Loan. Just 17 days later, the firearm was recovered from an individual named Kelonte Davis in the District of Columbia (CCN 24095482).

According to the Gerstein filed in that matter, on June 23, 2024, Davis was observed by officers on the 900 block of U Street NW, a busy nightlife area, at 1:15 AM wearing a cross-body satchel. Officers saw what appeared to be a heavy L-shaped object in the bag and conducted a stop and pat down of the satchel, feeling that the object was consistent with that of a firearm. Officers found the firearm in the satchel and discovered that it was loaded with one round in the chamber and 16 rounds of ammunition in a magazine with a 17-round capacity. Davis was under the age of twenty-one at the time of the offense and therefore prohibited by law from carrying the firearm in a concealed manner.

On September 27, 2024, Davis pled guilty to Carrying a Pistol without a License in Superior Court Case No. 2024 CF2 006168.

### D) **Recovery of Firearms Purchased by Hall**

Defendant Valentino Hall also purchased eight firearms between 2022 and May 2025. Of these purchases, three of the firearms ended up being found by law enforcement in the possession of other individuals.

| | RECOVERIES OF FIREARMS PURCHASED BY JEFFERSON | | | | | |
|---|---|---|---|---|---|---|
| # | Certification Date[12] | Transfer Date[13] | Make & Model | Serial # | FFL | Recovered |
| 1 | 11/04/2023 | 11/04/2023 | Palmetto State Armory PA15 | SCD261834 | Showmasters – Gun Show | Yes – 5/28/2025 |
| 2 | 12/15/2023 | 12/15/2023 | ATI Omni Hybrid | NS373852 | Green Top | Yes – 2/8/2025 |
| 3 | 5/11/2024 | 5/11/2024 | Ruger EC9 | 453-92366 | Green Top | Yes – 6/14/2025 |

1. ***Firearm Purchased on November 4, 2023***

ATF records show that Defendant Hall purchased a Palmetto State Armory PA15 firearm at a gun show. While the firearm is classified as a pistol, in terms of appearance it may be described colloquially as a rifle.



***Figure 6 - Photograph of the firearm purchased by Hall and subsequently found in the District of Columbia. The photograph on the right displays the serial number***

The firearm was recovered in the District of Columbia during the execution of a search warrant on May 28, 2025 (CCNs 25055717, 25079305, 25079549). According to the Gerstein filed in that case, when it was found, the firearm had one round in the chamber and 54 rounds of

---

[12]    The certification date is when a purchaser initially attempts to acquire the firearm. This includes filling out the ATF Form 4473 and certifying all answers are true and accurate.

[13]    The transfer date is when a purchaser is able to obtain the firearm from the store. Due to a NICS background delay, this date can be a few days later than the certification date.

ammunition inside a 60-round high-capacity magazine. Additionally, during the search warrant, officers found two additional thirty-round magazines for the firearm each holding another 30 rounds of ammunition, two additional firearms, one of which was equipped with a giggle switch, a large quantity of United States currency, and seven and a half pounds of marijuana. The person suspected of possessing the firearm, Marquay Colbert, is currently charged with drug and firearm related offenses in Superior Court case number 2025 CF2 006055.

### 2.  *Firearm Purchased on December 15, 2023*

ATF records show that Defendant Hall purchased an ATI Omni Hybrid from Green Top on December 15, 2023. That firearm was later recovered by the Charles County Sheriff's Office on February 8, 2025. An individual named Deangelo Antonio King has been indicted in Charles County Circuit Court Case No. C-08-CR-25-000382 with offenses relating to the possession of the firearm, including Illegal Possession of a Firearm by a Prohibited Person (P-133(B)), Possession of an Unregistered Rifle (PS 5.203(a)), Handgun on Person (CR 4-203), and Illegal Possession of Ammunition (PS 5-133.1). That matter is still pending.

### 3.  *Firearm Purchased on May 11, 2024*

ATF records show that Defendant Hall also purchased an HS Produkt handgun from Green Top on May 11, 2024. That firearm was ultimately recovered by the Maryland National Capitol Park Police when it was found abandoned in a community center restroom.

**E) Search Warrants on July 16, 2025**

On July 16, 2025, the ATF executed search warrants on Defendants Jefferson's and Hall's residence in Richmond, Virginia as well as Defendant Boyd's residence in Capitol Heights, Maryland. As discussed above, agents found a firearm inside of Defendant Boyd's residence that had been previously purchased by Defendant Jefferson.

Inside of Defendants Jefferson's and Hall's home, agents found an additional three firearms. Specifically, the agents found two firearms that Defendant Hall had purchased on March 9, 2025, and May 1, 2025, respectively, from Green Top. Additionally, agents found a third firearm, a handgun, that was not previously known to law enforcement.

None of the firearms were stored in a secure manner. Each of the firearms were present in plain view in various rooms of the home and were loaded with rounds in the magazine. One of the firearms, a pistol, was in a room adjacent to the bedroom of three minors.

## II.    LEGAL AUTHORITY AND ARGUMENT

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-

trial and is not to be used as a subterfuge to obtain discovery. *See Smith*, 79 F.3d at 1210, and *Williams*, 798 F. Supp. at 36.

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a Defendant] as required and the safety of any other person and the community," the Court shall order a Defendant held pending trial. 18 U.S.C. § 3142 (e). The Act provides however, for certain crimes, that there is a rebuttable presumption that no conditions or combination of conditions will assure the safety of the community. *See id.* "For the purposes of making that determination, a grand jury indictment, by itself, establishes probable cause to believe that a Defendant committed the crime with which he is charged." *United States v. Taylor*, 289 F. Supp. 3d 55, 62–63 (D.D.C. 2018) (internal quotations omitted).

The United States seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving a firearm) because the Defendants are charged with committing a firearm offense. A review and understanding of the facts and circumstances in the instant matter demonstrate that there are no conditions or combination of conditions that would assure the safety of the community. *See* 18 U.S.C. § 3142(e)(1). All four § 3142(g) factors favor detention pending trial, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendants; (3) their history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by their release. *See* 18 U.S.C. § 3142(g).

**1.   *The Nature and Circumstances of this Offense Merits Detention.***

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. The Defendants are charged with a serious offense carrying a significant penalty. For violating 18 U.S.C. § 933(a)(3), the Defendants face a maximum sentence of up to 15 years imprisonment pursuant to 18 U.S.C. § 933(b). Here, the evidence is convincing that Defendants Jefferson and Hall conspired to traffic a significant number of guns over multiple years, and that Boyd acquired multiple firearms from his co-conspirators, including the firearm that was present in his home when he was arrested despite a prior felony conviction.

The circumstances of the offense show there was additional evidence of trafficking besides the transactions between Defendants Hall, Jefferson and Boyd. First, Defendants Jefferson and Hall traveled to firearms retailers with other co-conspirators. On one of those occasions – June 2, 2024, the firearm purchased in the company of the co-conspirator, who had a prior felony conviction, ended up being found on the co-conspirator 30 days later in the District of Columbia. In addition to that gun recovery, two other firearms purchased by Defendant Jefferson ended up in the hands of people in the District of Columbia who were legally prohibited from possessing or carrying firearms.

Moreover, regarding Defendant Hall, of his eight purchases documented between 2022 and 2025, three of those firearms were found outside of Hall's possession. Specifically, two of those firearms were found by law enforcement in the possession of individuals either engaged in alleged criminal conduct or who were prohibited by law from possessing any weapons. In total, the nature and circumstances of the offense weigh in favor of detention.

2.  *The Weight of the Evidence against the Defendants is strong*

The second factor to be considered, the weight of the evidence, also weighs in favor of detention. The evidence in this case against the Defendants is significant. There is video surveillance showing Defendants Jefferson and/or Hall making purchases on multiple occasions along with documentation from each purchase. Additionally, the evidence includes text communications among the co-conspirators that lines up with the timing of the purchases. And it is worth noting that on multiple occasions Jefferson purchased multiple firearms on the same day, which is further evidence of trafficking. Finally, multiple firearms purchased by Hall and Jefferson were recovered in the community, including a firearm recovered from Boyd's home. Accordingly, the evidence of the charged conspiracy in the indictment is strong.

The weight of the evidence should be considered equally with the other § 3142 factors. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 U.S. Dist. LEXIS 18988, at *29-30. Instead, "the weight of the evidence against [a] Defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Moreover, the Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

"If the evidence against a Defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that Defendant will flee to avoid future court proceedings and may indicate that the Defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *29-30. And so it is in this case, the weight and strength of the evidence increases the prospect that the Defendant will present a danger to the community if released.

### 3. *Each Defendant's History and Characteristics Merit Detention*

The third factor, the Defendants' history and characteristics weigh in favor of detention.

<u>Moniqua Jefferson</u>

The Pretrial Services Report dated July 16, 2025, indicates that Defendant Jefferson has no prior arrests or convictions. However, the Government's investigation indicates that Defendant Jefferson was previously convicted in Richmond-John Marshall Criminal/Traffic General District Court of Cruelty to Animals in Case No. GC20019401-00. (Exhibit 1).[14] According to the General District Court docket, Defendant Jefferson was sentenced to twelve months of incarceration, execution of sentence suspended as to all but one month.

According to documents provided by Animal Control which investigated the case, witnesses observed Defendant Hall abusing a puppy, sometimes in the presence of Defendant Jefferson, who did not intervene to stop the abuse. A medical examination of the puppy revealed untreated broken right femur, tibia, and skull fracture because of blunt force trauma. The injuries to the leg were so severe that the puppy's leg had to be amputated. During the investigation and

---

[14] The matter appeared to have been appealed to Richmond Circuit Court in Case No. CR21M01061-00. According to the docket, the disposition was dismissed. At the time of this filing, it is not confirmed whether this disposition means that the charges were dismissed, or that the appeal was dismissed. Exhibit 2.

prior to the examination, officers had extensive conversations with Defendant Jefferson to discuss medical treatment for the dog, to no avail. Ultimately, the court determined that Defendant Jefferson allowed Defendant Hall to abuse her puppy. As a condition of the sentence, Defendant Jefferson was prohibited from owning animals for five years. It is worth noting that when ATF agents arrested Defendant Jefferson in her home on July 16, 2025, two German Shepherds were found inside of the home, which would appear to be a violation of her probation.

Additionally, regarding the defendant's history with firearms, it is worth noting here that Defendant Jefferson purchased at least fourteen firearms since 2022. Some have been recovered from other co-conspirators or in the community, but the whereabouts of many of these guns are unknown as of this filing. At the initial appearance on July 16, 2025, counsel for Defendant Jefferson represented that if released, Defendant Jefferson would be returning to the residence where she was arrested. It is worth noting that three loaded firearms were found in the home and were not stored in a safe in any kind, posing a distinct danger to the three children present in the home.  As a result of Defendant Jefferson's prior conviction, apparent violation of her probation conditions, distribution of firearms, and dangerous storage of firearms in her own, this factor weighs in favor of detention.


*Valentino Hall*

According to the Pretrial Services Report filed on July 16, 2025, Defendant Hall has eight prior arrests and one prior conviction. Based on a review of the Virginia's statewide docket, these arrests and convictions appear to have occurred in Richmond, Virginia area.

On August 5, 2021, the defendant was convicted of Cruelty to Animals under Virginia Code § 3.2-6570. As discussed above, he was observed multiple times by third parties engaging

in abusive behavior towards a puppy. That behavior included jerking, kicking, and dragging the puppy. Furthermore, as described above, the puppy's injuries were severe, requiring amputation of one of its legs. The defendant received a sentence of twelve months, execution of sentence suspended as to all. As part of probation, Defendant Hall was also prohibited from any animals for a period of five years. However, two German Shepherds were found in the residence where Defendant Hall was arrested on July 16, 2025, possibly constituting a violation of his probation.

According to Richmond City Court records, the defendant's probation was revoked on September 26, 2022 (Case No. CR21F00979-01) and the defendant was resentenced to 12 months incarceration, execution of sentence suspended as to all but three months.[15]

The defendant also has a prior conviction under Virginia Code § 46.2-817(A) for Disregarding a Signal by a Law Enforcement Officer (Case No. GT21019749-00). The offense was reduced from an initial charge of Eluding a Police Officer.

The defendant also has prior arrests for the following offenses committed on the indicated dates, each of which were dismissed:

- Case No. JA101341-08-00: Assault and Battery on a Family Member (2/10/2021)

- Case No. JA027366-01-00: Assault and Battery on a Family Member (8/18/2017)

- Case No. JA077282-03-00: Assault and Battery on a Family Member, Abduction by Force (12/12/2019)

- Case No. JA101341-06-00: Brandishing a Machete or Bladed Weapon, Abuse of a Child with Serious Injury (4/22/2020)

---

15 At the time of this filing, the Government is not in possession of records indicating the basis for the revocation.

The Government would also note that during its investigation, it discovered images and videos of Defendant Hall in which he appears to glorify the possession of firearms.



This behavior, combined with the unsafe way in which the firearms that he purchased were stored in the home on July 16, 2025, combined with Defendant Hall's history and characteristics, weigh in favor of detention.

*Derrick Boyd, Jr.*

Based on a review of the Maryland docket, the defendant was previously convicted in Docket Number CT131611X of Felony Theft. According to a Statement of Probable Cause filed in that matter, Defendant Boyd responded to an advertisement for the private sale of a Yamaha motorcycle valued at $7,000. Defendant Boyd communicated with the seller using a fake name and arranged to meet with the seller to inspect the motorcycle. Defendant Boyd asked to test drive the motorcycle, and the seller agreed. Defendant Boyd drove away with the motorcycle and never

returned or provided payment. Three days later, police officers observed Defendant Boyd driving the motorcycle with the rear tag concealed by cardboard.

Defendant Boyd was sentenced to a term of 8 months incarceration (241 days according to the docket) and 5 years of probation. The Maryland docket indicates that Violation of Probation proceedings were commenced in the matter on December 12, 2014, and concluded on March 7, 2019. No further information is available at this time indicating whether the defendant was found to have violated probation.

According to the Pretrial Services Report, the defendant was convicted in Docket No T131610X of Felony Theft of Property. No further information regarding the factual basis of the offense is available at this time.

In light of Defendant Hall's criminal history, he was prohibited from possessing any firearms, but nevertheless was found on July 16, 2025, a firearm in his home that he had purchased from Defendant Jefferson.

### 4. *The Defendants Present a Danger to Our Community.*

The fourth and final factor, danger to any person or the community posed by the Defendant's release weighs in favor of detention. "At the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33. Possession of a firearm alone, particularly as it relates to Defendant Boyd, presents a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the Defendant presents an extreme safety risk to

the public.").

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *Munchel*, 991 F.3d at 1280 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

In certain ways, Defendants Hall and Jefferson's conduct is more egregious than Defendant Boyd's illegal possession of a firearm in the community. What the evidence of the conspiracy showed was that Defendants Hall and Jefferson were actively trying to supply weapons to individuals who were not allowed to possess or carry them, some of whom had been convicted for extremely violent behavior. And though there is no allegation that the firearms they sold or transferred were used in any shootings, their conduct certainly created that risk, with one of the firearms being found in a home where there were obvious signs of distribution of narcotics (Marquay Colbert), another home being carried on U Street's busy nightlife corridor (Kelonte Davis), and another being carried by a felon previously convicted of shooting a firearm at his girlfriend (Thomas Good). Even more concerning, not all the firearms that were purchased by the Defendants have been recovered, meaning there is a possibility the Defendants may still have access to the firearms for future transfer or resale. Moreover, even if a Court were to order the Defendants not to possess any firearms, it is unclear whether the Court's order would flag in a licensed retailer's background check should Defendants Hall or Jefferson attempt to purchase

firearms in the future. Essentially, the Court would be trusting the word of these Defendants not to engage in further firearms purchases even though the evidence is that Defendants Hall and Jefferson were prolific purchasers of guns, with Defendant Hall making purchases up to May of this year. As a result, the evidence of the Defendants danger to the community weighs in favor of detention.

## CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the Court detain the Defendants pending trial on these charges.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY


By:   s/ Travis Wolf                
TRAVIS WOLF
Assistant United States Attorney
NY Bar No: 5483243
United States Attorney's Office
601 D Street, NW
Washington, D.C. 20530
Telephone: 202-803-1670
Travis.Wolf@usdoj.gov
